FILED
IN OPEN COURT

OCT 27 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| INDEPENDENCE FEDERAL SAVINGS BANK, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:08-cv-1189 |
| ) | |
| JAY BONANZA BRILEY, et al., ) | |
| Defendants. ) | |

## Memorandum Opinion

Entities owned and controlled by Defendant Jay Briley, "J.B.B. 1033 Park Road, LLC" and "Briley Builders, Inc" (the "Makers"), executed a Note in favor of Plaintiff Independence Federal Savings Bank ("IFSB" or "the Bank"), which Defendants Jay and Constance Briley ("the Brileys") subsequently guaranteed. IFSB filed its Complaint on November 13, 2008 alleging breach of contract. Before the Court are the parties' cross motions for summary judgment pursuant to Fed. R. Civ. P. 56. The Court heard oral arguments on the motions on Friday, October 9, 2009.

### I. Background

The Makers entered into a lending relationship with IFSB in 2006 to finance a development project converting an apartment building into condominium units in Washington, D.C. The Makers initially borrowed $2,050,000.00 from IFSB. The parties structured the loan to allow the borrower to draw from the principal as needed, with interest assigned accordingly. Interest was to be paid from "interest reserves," set aside from the principal so the borrower would not have to independently make interest payments. Thus, there was relationship between the amount drawn, how quickly the borrower drew funds, and how much interest actually accrued.

1

At some point following the initial loan, the interest reserve became depleted and the builders determined the project required further funding to be completed. The Makers refinanced the loan and on October 18, 2007, the Makers executed a $2,500,000.00 Note in favor of IFSB, which the Brileys subsequently guaranteed. The Note required monthly interest payments and repayment in full in 9 months. The lending structure of the refinanced loan was the same as before, with the Bank again setting aside "interest reserves." The refinanced total of $2.5 million went towards paying off the old loan, a "second mortgage," and other miscellaneous expenses.

Also on October 18, 2007, the Brileys executed a deed of trust in favor of IFSB on the project property and two other condominiums owned by the Brileys as collateral for the loan. The deed of trust required the Brileys to keep current insurance on the properties and to pay any applicable taxes, assessments, etc. due on the properties. While in the process of closing the loan, IFSB discovered tax liens on the collateral properties totaling $48,922.87. IFSB paid off the taxes and deducted that amount from the amount actually disbursed to the Makers.

The project went forward, but the interest reserves again became overdrawn and in the Summer of 2008, Mr. Briley requested further financing. This time IFSB refused. When the Note matured on July 18, 2008, the Makers failed to make payment on the loan. At this time, Mr. Briley sought financing from the District of Columbia Housing authority ("DCHA") in the amount of $100,000, which was a subsidy from the DCHA for making two of the units ADA compliant.

On September 26, 2008, IFSB issued a notice of default to the Brileys and on October 13, IFSB issued a foreclosure notice on the project property and the two other

2

condominiums. A foreclosure sale went forward in March 2009 and IFSB, as the only bidder, secured all three properties with a total bid of $15,000.

## II. Jurisdiction, Venue, and Choice of Law

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. Venue is proper in this case under 28 U.S.C. § 1391(a)(1) because all defendants reside in Virginia.

The Note and Guaranty both contain choice of law provisions selecting the District of Columbia as supplying the applicable law, which neither party disputes.

## III. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if it is shown that no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law unless a fair-minded jury could return a verdict for the nonmoving party on the evidence presented. *Id.* at 247-48. Further, "[w]hen faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves

3

judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). *See also E.I. DuPont De Nemours and Co. v. Ampthill Rayon Workers, Inc.*, 516 F.Supp.2d 588, 593 (E.D.Va. 2007) ("The standard of review does not change when ruling on cross-motions for summary judgment. The motions are evaluated separately against the Rule 56 standard").

### IV. Analysis

#### a. IFSB's Motion for Summary Judgment

##### i. Breach of Contract

IFSB alleges the Brileys are in breach of the Guaranty executed on October 18, 2007. Ordinarily, "[a] court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." *World-Wide Rights Ltd. Partnership v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992); *see also Washington Metropolitan Area Transit Authority v. Potomac Investment Properties, Inc.* 476 F.3d 231, 235 (4th Cir. 2007). This is because "[o]nly an unambiguous writing justifies summary judgment without resort to extrinsic evidence." *Id.*

Thus, a threshold step for the Court is to determine whether, as a matter of law, the contract is ambiguous on its face. *Id.* Under District of Columbia law, the "[i]nterpretation of a contract is a question of law unless it is dependent on extrinsic evidence or the credibility of extrinsic evidence." *Duncan v. Children's Nat. Medical Center*, 702 A.2d 207, 214 (D.C. App. 1997) (citing *1010 Potomac Associates v. Grocery Mfrs. of America Inc.*, 485 A.2d 199, 205 (D.C. 1984)). If the Court is able to conclude that the contract is sufficiently unambiguous, "it may then properly interpret the contract

4

as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Id.*

The contract directly at issue here is the October 18, 2007 Guaranty ("the Guaranty") initialed and signed by Jay B. Briley and Constance H. Briley. In pertinent part, the Guaranty provides:

> 1. The undersigned hereby absolutely and unconditionally guarantee to the Lender the prompt, absolute and unconditional payment when due, whether at maturity or by acceleration, or otherwise, of any and all obligations and indebtedness of the Borrower to Lender...including any and all principal and interest due and payable by Borrower under the Note, and any and all advances...All sums due and payable by the Guarantors shall be payable on demand of the lender.
>
> ...
>
> 10. The Guarantors agree that in the event this Guaranty is placed in the hands of an attorney for enforcement, the Guarantors will reimburse the Lender for all expenses incurred, including reasonable attorneys [sic] fees.

IFSB suggests, and the Court agrees, that the Guaranty clearly and unambiguously obligates the Brileys to pay the principal and interest if the Makers fail to and further requires the Brileys to pay expenses and attorneys' fees if IFSB retains an attorney to enforce the Guaranty. Pl. Br. at 5. There is no alternative meaning proffered by the Brileys as to any of the material clauses of the Guaranty, and the Court finds no other ambiguity in the instrument. Thus, in the event the Note went unpaid by the Makers, the Brileys obligated themselves to pay the principal and any outstanding interest. Failure to do so constitutes the breach of a facially unambiguous contract.

5

The Brileys do not dispute that they validly executed the Guaranty. Nor do the Brileys dispute that the Note went unpaid by the Makers. As such, this Court has little difficulty in concluding that the Brileys are in breach of the Guaranty. In their cross motion for summary judgment, however, the Brileys seek to invalidate the Guaranty due to IFSB's breach of the covenant of good faith and fair dealing.

### ii. Breach of the Covenant of Good Faith and Fair Dealing

The Brileys do not contest that the Makers initially entered into a lending agreement with IFSB, nor that they subsequently guaranteed the second Note for $2.5 million. Rather, they seek summary judgment declaring the Guaranty void, alleging that IFSB breached the covenant of good faith and fair dealing in the lending relationship.

The District of Columbia generally recognizes that "[a]ll contracts contain an implied duty of good faith and fair dealing.'" *Paul v. Howard Univ.*, 754 A.2d 297 (D.C. 2000). This means that "in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988). Thus, "[i]f the party to a contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." *Id.* *See also Willens & Niederman v. 2720 Wisconsin Ave. Coop. Ass'n*, 844 A.2d 1126, 1135 (D.C. 2004). However, the implied duty of good faith and fair dealing is not a "means to add new terms to [an] agreement" *C&E Services, Inc. v. Ashland, Inc.*, 601 F.Supp.2d 262, 275 (D.D.C. 2009). Though there is no precise catalog of conduct which constitutes a breach of the duty, "[s]ubterfuges and evasions violate the obligation of good faith in

performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty." RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d (1981).

Importantly, "bad faith means more than mere negligence." *Allworth v. Howard University*, 890 A.2d 194, 202 (D.C. 2006) (citing *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 687 A.2d 111, 122 (1996)) (internal quotations omitted). Thus, in order to establish a breach of the duty of good faith and fair dealing, the moving party must establish that the would-be breaching party's actions "were based on bad faith or were arbitrary and capricious." *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1112 n. 11 (D.C. 1999).

The Brileys argue that IFSB prematurely depleted the loan reserve and took "construction line items" in the loan budget and charged them to interest, leaving the project with insufficient funds to complete the construction. Def. Br. at 8. The Brileys also argue that IFSB took $48,923.00 from the construction budget to pay taxes not included in the line item. *Id.* Further, the Brileys allege IFSB interfered with their attempt to find supplemental financing from the DCHA by commencing foreclosing proceedings while the DCHA loan was close to closing. *Id.* Taken together, according to the Brileys, these claims demonstrate that "the Bank willfully interfered with the Borrowers' performance and other obligations" and thus "[t]he Bank's conduct clearly constitutes a breach of its inherent covenant of good faith and fair dealing..." *Id.* at 9.

7

The Court, however, finds nothing in the record upon which the Brileys' allegations of bad faith can be substantiated. The Brileys do not point to a single clause of the Note or Guaranty which IFSB breached. Nor can the Brileys point to any language in the instruments which give any direction as to how the interest reserves should have been structured. Rather, uncontroverted evidence suggests that the reserves were structured according to the Makers' own projected draw schedule, and that IFSB merely followed these projections in allocating funds to the reserves. Isard Decl. ¶5, Def. Opp. Ex. A at 1.

The Brileys argue that IFSB was "obligated to properly structure the Loan and ensure that its interest and contingency reserves were sufficient to cover all interest payments that would come due and any contingencies that would arise..." Def. Br. at 8. Exactly where the Brileys find this obligation within the four corners of the Note and Guaranty is unclear, and there is nothing facially improper about structuring the lending arrangement with separate "interest reserves" as IFSB did here. The Court does recognize that in structuring the interest reserves, IFSB was obligated by its duty of good faith to avoid willfully obstructing the Makers' ability to perform their end of the bargain. *See Hais*, 547 A.2d at 987 (D.C. 1988). On this point, however, the Brileys offer as evidence nothing more than the fact that the loan was drawn down quickly and that the Makers ultimately found themselves unable to pay the loan. Though in hindsight IFSB may have been better advised to structure the reserves differently, whether IFSB performed competently or negligently is immaterial. Either is still a far cry from the requisite showing of willful or arbitrary and capricious conduct on IFSB's part.

Likewise, the Brileys' allegation of bad faith concerning IFSB's reallocation of $48,923.00 to pay taxes encumbering the project property falls under its own weight. Pursuant to the Deed of Trust, the Makers were required to:

> pay when due all taxes, assessments, water rates, sewer rates and other charges, and any rents and/or other sums now or hereafter payable with reference to the Mortgaged Premises, or any part or parts thereof, or now or hereafter assessed as liens on or levied against the Mortgaged Premises or any part thereof in case of default in the payment thereof when the same shall be due and payable, it shall be lawful for Noteholder [IFSB], without notice or demand to Grantor, to pay the same or any of them ..."

Deed of Trust at Page 3 (¶2); Isard Decl. ¶15. Again, IFSB can be accused of nothing more than acting according to its enumerated contractual rights.[1] The Brileys do not dispute the existence of the tax lien encumbering the property and they do not claim that they made efforts to pay down the lien. That IFSB subsequently took steps to secure its priority in the collateral is not evidence of a bad faith obstruction of the Makers' ability to perform under the contract. Rather, the contract explicitly entitled IFSB to pay off the tax liens, and as no other evidence of bad faith is offered by the Brileys on this point, the Court refuses to imply it.

Finally, as to IFSB's decision to foreclose despite the pendency of the DCHA financing, this is not a case in which a party to a contract alleges bad faith in a decision left discretionary to the non-breaching party by the contract. Rather, the power to demand payment on a matured, unpaid note is "implicitly absolute" in such a contractual relationship. *See Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1154 (D.C. Cir. 1984)

---

[1] Also, as IFSB points out, "Defendants knew of the withholding for payment of tax liens" before they closed on the refinancing deal and "[n]evertheless, the Borrowers executed the Settlement Statement and accepted the loan money." Pl. Br. at 9.

9

(applying Virginia law). The Brileys do not deny that the Note matured on July 18, 2009, but insist that they were "literally within days of the closing of the DCHA loan" when IFSB "willfully interfered" with the pending transaction by issuing a notice of foreclosure on October 13, 2008. Pl. Br. at 8-9.[2] This allegation is immaterial. The Brileys do not put forth an argument for contract modification, but rather sweep IFSB's foreclosure under the generic rubric of "bad faith." Demanding payment on a Note long since due, and taking actions to secure the debt when repayment is not realized, simply cannot be construed by the Court as "destroying or injuring the right of the other party to receive the fruits of the contract." *See Hais*, 547 A.2d at 987.

In each of the above arguments, the Brileys would have the Court impose a duty upon IFSB to abstain from their bargained-for contractual rights. Doing so implicitly imposes new duties which would "override or modify explicit contractual terms," which is, as IFSB correctly points out, impermissible under the doctrine of good faith and fair dealing. *See Riggs Nat. Bank of Washington, D.C. v. Linch*, 36 F. 3d 370 (4th Cir. 1994). In the end, there is nothing in the record before the Court upon which a fair-minded jury could return a verdict for the Brileys. As such, summary judgment must be entered in favor of IFSB as to the breach of contract claim.

### b. The Foreclosure Sale

Having entered summary judgment in favor of IFSB on the issue of contractual liability, the sole issue remaining is whether the Court must, in equity, set aside the foreclosure sale of the three properties the Brileys posted as collateral in guaranteeing the

---

[2] The Court notes that IFSB's evidence suggests that DCHA projected a "tentative" closing date of November 17, 2008, a significant departure from the "literally within days" representation of the Brileys. *See* Def. Ex. H at 1.

Note. The Brileys cite several District of Columbia cases, *Hart v. Hines*, 10 App. D.C. 366 (App. D.C. 1897); *Hunt v. Whitehead*, 19 App. D.C. 116 (App. D.C. 1901); and *Van Senden v. O'Brien*, 61 App. D.C. 137 (App. D.C. 1932), for the proposition that the Court can vacate a foreclosure sale which fetches a price so grossly inadequate so as to "shock the conscience."

The Brileys claim that the combined value of the three properties exceeds $4,000,000. The Brileys allege they obtained a commitment from an outside lender to purchase all three properties for $1,500,000 before the foreclosure sale, but IFSB rejected this offer in bad faith. Pl. Br. at 10. IFSB counters that it never received such an offer. Pl. Stmt. of Disp. Facts at 12. The Bank then bid only $5,000.00 at foreclosure for each collateral asset (for a total of $15,000.00), which, according to the Brileys, was another violation of IFSB's contractual duties of good faith and fair dealing under the laws of the District of Columbia.

However, as acknowledged at the October 9, 2009 hearing, the Bankruptcy Court of the District of Columbia already adjudicated this issue at a lift stay proceeding held on February 5, 2009. There, Bankruptcy Judge Teel received expert testimony and permitted the parties to fully argue the issue of the value of the house. *See* Transcript of Hearing on Motions for Relief from Stay at 109. At that hearing, Bankruptcy Judge Teel specifically drew upon the fact that the properties still required significant work and concluded that the properties would command a price of $1.5 million in the relevant market. *Id.* at 108-09. Accordingly, as agreed to by IFSB, the Brileys will be credited that amount against the principal and accrued interest on the Note. As such, the issue of

11

the whether the Brileys are entitled to equitable relief is moot, and this Court need not address any related issues raised in the parties' briefs further.[3]

## V. Conclusion

For the foregoing reasons, Plaintiff Independence Federal Savings Bank's Motion for Summary Judgment (Dkt. no. 27) is hereby GRANTED. Defendants Jay Bonanza Briley, et al.'s Motion for Summary Judgment (Dkt. no. 34) is DENIED.

An appropriate order shall issue.

ENTERED this 27th day of October, 2009.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[3] IFSB argues in its Opposition Brief that the ruling of the Bankruptcy Court should be given preclusive effect under the doctrine of collateral estoppel. The Court declines to fully engage in this analysis. For purposes of the equitable relief sought by the Brileys, the Bankruptcy Judge's determination suffices in informing this Court's threshold "shocks the conscience" inquiry.